FILED
2026 Sep-11 PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| **WILLIAM STUMP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **6:25-cv-1269-EGL** |
| | ) | |
| **DIMENSIONALL LOGISTICS, LLC et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION & ORDER**

William Stump sued Dimensionall Logistics, LLC, and amended his complaint on September 3, 2025, to add Dimensionall Transportation, LLC and Dimensionall Transport, LLC. *See* Docs. 1, 6. He pleads three counts under the Americans with Disabilities Act. *See* Doc. 6 at ¶¶20-75. On June 1, 2026, Logistics moved for summary judgment on a single ground: that it never employed Stump and is neither the successor to nor the alter ego of the company that did, so that all three of his ADA counts fail as a matter of law. *See generally* Docs. 24, 25. For the reasons below, the motion is **DENIED**.

**BACKGROUND**

William Stump drove a truck for a trucking business operating out of Hamilton, Alabama. *See* Doc. 6 at ¶¶8, 13; Doc. 23 at 68, 112. He testified that he knew the business as "Dimensionall Transportation or Dimensionall Trans." Doc.

23 at 107. Stump was first hired in 2022. *Id.* at 106. He claims to have suffered during his employment from chronic PTSD, anxiety, depression, attention deficit disorder, attention deficit hyperactivity disorder, borderline personality disorder, and cancer in remission that required a device attached to his body that he replaced weekly. Doc. 6 at ¶¶11-12; Doc. 23 at 68-69.

Four entities share the Dimensionall name. Robert "Bob" Perkins owned two of them: Dimensionall, Inc. and Dimensionall Transportation, LLC. Doc. 23 at 13. Ryan Steig managed operations for Dimensionall, Inc. from 2014 or 2015 until the last week of May 2024. *Id.* at 13, 22. He testified as to the distinction between these two entities: Dimensionall, Inc. paid the drivers and was where he and Stump worked, while Transportation "was just an authority … just a DOT authority" that "never had an employee," "never filed one tax return. Never received a check. Never wrote a check," and was "a dormant LLC from 2018 to 2024." *Id.* at 17, 22, 24-25.

The two other entities are Dimensionall Transport, LLC, and Dimensionall Logistics, LLC. Steig formed both in the spring of 2024, after Perkins told him in January that Inc. would close, but before it did. *Id.* at 12-13, 26, 70; Doc. 25 at 13. Transport, an Alabama entity with Steig as its sole member, was by his account a placeholder that "never existed basically"; he used an incorporation service while "name searching" and the service "formed it and dissolved it." Doc. 23 at 13-14, 27. The parties' briefs treat Transport as Logistics's former name, Doc. 25 at ¶8; Doc.

27 at ¶8, but the Secretary of State's records show that the name Logistics changed from was "Dimensionall Trans LLC," Doc. 23 at 70. He and his wife have been the only members of Logistics, and he holds the majority interest in the entity. *Id.* at 12. Lance Perkins, Bob Perkins's son, handled Logistics's human resources remotely from Michigan and was, at Logistics, "[t]he only guy" in the department. *Id.* at 13-14, 31-32.

Stump alleges that, during his employment, Steig ridiculed him weekly, calling him "retarded," "fucked up in the head," and "fucking stupid," and telling him he would not "babysit" him. Doc. 6 at ¶27. On five or six occasions, three of them between December 2023 and May 2024, Steig allegedly scheduled him for assignments that made it impossible for Stump to return in time to replace the medical device necessary for his cancer treatment; rather than refuse a load, Stump asked his partner to drive a replacement to him. *Id.* at ¶¶29, 49. Stump testified that he called Lance Perkins and "complained about Ryan," and that Perkins would answer, "oh, Ryan must be having a bad day," and would otherwise overlook Steig's conduct. Doc. 23 at 115. Stump alleges that on or about April 28, 2023, after he complained, the company switched him from company driver to lease purchase without his consent, and that he lost his health benefits. Doc. 6 at ¶¶17-18, 63-65.

Steig denies the conduct. Asked whether he made the alleged remarks, he answered, "Never," and explained that Stump "sat behind me in church when he got

baptized." Doc. 23 at 30. Asked about the scheduling allegation, he answered, "That's not true," and added that he "did not know he had to go somewhere" to replace the device. *Id.* He testified that assignments went "through dispatch," though he also testified that he had "overseen all of the departments" and that the reporting structure consisted of "a dispatcher, HR, and me." *Id.* at 23, 31. Stump testified that Steig's job title was "[d]ispatch," but that, "[a]ccording to Lance, he was everything," and that Steig "repeatedly told us he was calling the shots." *Id.* at 105.

Steig built his new companies over these same months. He testified that Bob Perkins told him in late January 2024 that he would not renew insurance, that "Dimensionall Inc. was coming to an end," and that he was retiring. *Id.* at 13. Steig called what followed "a mad scramble." *Id.* On April 18, 2024, he filed a Certificate of Formation for the entity now called Dimensionall Logistics, LLC, then named "Dimensionall Trans LLC," listing himself as organizer and giving 3328 State Highway 17, Hamilton, as the organizer's street and mailing address. *Id.* at 12, 70. That address appears on Dimensionall Transportation's USDOT registration and on the bill of lading Stump produced, and it is where Logistics itself first operated. *Id.* at 15-16, 72, 76. On May 7, 2024, one week before Stump's last day, the entity became Dimensionall Logistics, LLC. *See id.* at 70; Doc. 6 at ¶19. Asked why, Steig answered that he "kind of just did not like the name" and that "[i]t was too close to-

-," without completing the comparison, and that "Dimensionall Logistics was essentially our brokerage." Doc. 23 at 12.

Dimensionall, Inc. ceased operations on May 31, 2024, when its insurance lapsed, and its remaining employees separated that day. *Id.* at 26. The next day, Logistics bought four of Dimensionall, Inc.'s trucks. *Id.* at 16, 21. Also on June 1, 2024, by Steig's account, he and Bob Perkins agreed that Steig would buy Dimensionall Transportation: "We signed all of the paperwork and everything, and we did a payment plan type of thing, and when I went to transfer it, Michigan LLC's do not transfer to Alabama, so we scrapped the whole thing and dissolved it." *Id.* at 14. He testified that the terms were "a thousand dollars a month for 24 months" and that he thinks he "made two payments." *Id.* at 27. He was particularly interested in obtaining the older USDOT number, as "[i]t's easier to insure an older DOT number vers[u]s a newer company." *Id.* at 21. Logistics calls the sale "abandoned." Doc. 25 at 14; *see also id.* at ¶22. Asked separately whether he had "ever" been a member of Dimensionall Transportation, Steig answered, "No." Doc. 23 at 14.

Stump filed his EEOC charge on or about June 3, 2024, naming Dimensionall Transportation, LLC. Doc. 6 at ¶9; Doc. 23 at 68-69, 105, 134; Doc. 6-1 at 2. Logistics hired Lance Perkins that month and terminated him in January 2026. Doc. 23 at 14. Stump testified that the responses he received to his charge came from Perkins. *Id.* at 111. Logistics began operating on August 1, 2024, once insurance

took effect. *Id.* at 17. Steig testified that "whatever was going back and forth with EOC, that was Lance," and that he himself "did not know what EOC filings were." *Id.* at 28, 32.

The EEOC issued Stump a Determination and Notice of Rights on May 8, 2025. Doc. 6 at ¶10; Doc. 6-1. The Secretary of State's records show two transactions dated May 8, 2025, moving Logistics's registered-agent address and agent mailing address from 3328 State Highway 17 to 2126 Bexar Avenue West. Doc. 23 at 70. Thirteen days later, Steig signed a Michigan Certificate of Dissolution for Dimensionall Transportation, LLC in the capacity of "Member," recording that dissolution arose "upon unanimous vote." *Id.* at 18, 22, 77. Steig testified that the dissolution was prepared in February 2025 and not recorded until May, *id.* at 27, but the certificate he signed bears the May 21 date, *id.* at 77-78.

The parties dispute how much of the old operation carried into the new one. Logistics hauls "mobile homes, modulars, and stuff like that"; Steig testified that Dimensionall, Inc. hauled the same freight and "did other stuff, too. They did flatbeds." *Id.* at 17. Logistics worked out of 3328 State Highway 17 at first, under what Steig described as a "[n]ew lease" with Land Markers, and Logistics later bought its own office. *See id.* at 16. Steig testified that Logistics never shared a bank account, website, or email address with Inc. or Transportation, and never shared dispatch operations with Transportation, *id.* at 16-17, and that it assumed none of

their debts, liabilities, leases, or contracts, *id.* at 18. Asked whether the companies shared a telephone number, he answered "not that I know of. I can't remember what Inc. phone number was." *Id.* at 16. He testified that Logistics did not serve Inc.'s former customers "on a consistent basis," that "Logistics had its own customers and own contract," and that "Inc's primary customer was Sunshine. Logistics never worked for Sunshine." *Id.* at 17.

Four people moved from the old operation to Logistics: Steig, his wife, driver Phillip Ingle, and Lance Perkins. *Id.* at 10, 13-14, 17, 22. Logistics's brief asserts that "only one worker (a driver)" holds employment in common, Doc. 25 at ¶23; *id.* at 15, but its reply concedes all four, Doc. 29 at ¶23. Logistics now employs nineteen people, fifteen of them drivers. Doc. 23 at 12-13, 17. Steig testified that trucks at Dimensionall, Inc. bore "Dimensionall Transportation" on the doors because that was the authority they ran under, though he did not know whether every truck did; Stump testified that the trucks he and the other drivers operated all bore that name. *Id.* at 25, 33, 112, 116.

Stump produced no pay stub, employment agreement, tax record, or bill of lading bearing the Logistics name, and he testified that he never received a paycheck from Logistics. *Id.* at 106, 111. The single pay stub in the record reads "Dimensionall LLC"; Stump testified that "[t]he one before may have said Dimensionall Transport." *Id.* at 105, 140. He testified that "the whole time I was employed for

either one of these companies listed … every other week it changed on the pay stub. It changed on permits. It changed to benefit them," *id.* at 102, and that "there were some that one week said Trans and then one week Transportation," *id.* at 111. Asked about employment agreements, he answered that "[t]here never was from any of the multitude Dimensionall's." *Id.* He agreed that he does not know the corporate structure of the company he worked for, *id.* at 117, that he does not know what a corporate organizer or registered agent is, and that he first heard the name Dimensionall Logistics "[r]ight around the time" of the events leading to his termination, *id.* at 108. Asked for the factual basis of his successor and alter ego allegations, he answered: "I know people that still work there, same trucks, same everything. Ryan still holding the same position and pulling the strings." *Id.* He further testified that Steig operates another company, Chase Sundown Logistics, running "around the same trucks," which he described as a "chameleon company." *Id.* He also testified that Steig "is running around saying[] he had the name change to avoid this issue" and "is going to get away with it." *Id.* at 102.

Stump sued Logistics alone. *See* Doc. 1. Logistics denied employing him and identified Dimensionall, Inc. as his employer. Doc. 25 at 2. Steig, deposed as Logistics's corporate representative, testified only that Stump "did not work for Logistics" and that he had no opinion who he did work for. Doc. 23 at 19; *see also id.* at 54. Stump amended his complaint on September 3, 2025 to add Dimensionall

Transportation and Dimensionall Transport, alleging that Logistics is the successor to Transportation and Dimensionall, Inc., and the alter ego of Transportation and Transport. *See* Doc. 6 at ¶6. He pleads harassment under 42 U.S.C. § 12112, failure to accommodate, and retaliation under 42 U.S.C. § 12203. *Id.* at ¶¶20-75. Neither Transportation nor Transport has appeared. Logistics moved for summary judgment on June 1, 2026, Stump responded on July 28, 2026, and Logistics replied on August 11, 2026. *See* Docs. 24, 25, 27, 29.

**STANDARD**

Summary judgment is appropriate when the facts, supported by the record and taken in the light most favorable to the nonmovant, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And one is "material" if it is an element of the underlying claim that might affect the case's outcome. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out to the district court that there is no evidence supporting an essential element of the nonmovant's case. *Id.* at 325.

The district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmovant then must show that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the record evidence would not permit a rational trier of fact to find for the nonmovant, then there is no genuine dispute for trial. *Id.* at 587. All reasonable doubts, however, are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

**DISCUSSION**

Logistics moves for summary judgment on a single ground: that it never employed Stump and is neither the successor to nor the alter ego of the company that did, so that all three of his ADA counts fail as a matter of law. *See generally* Doc. 25. Its motion does not address the merits of the harassment, accommodation, or retaliation claims. *Id.* Thus, whether Steig's alleged conduct violates the ADA is not before the Court.

To bring an employment discrimination claim under the ADA, a plaintiff generally must show that the defendant was his employer or prospective employer. *See Udoinyion v. The Guardian Security*, 440 F. App'x 731, 734 (11th Cir. 2011). Stump cannot make that showing against Logistics directly. He has produced no pay

stub, employment agreement, tax record, or bill of lading bearing the Logistics name, and he testified that he never received a paycheck from Logistics. Doc. 23 at 106, 111. Logistics did not begin operating until August 1, 2024, more than two months after his last day. See *id.* at 17; Doc. 6 at ¶19. Stump agreed that he does not know the corporate structure of the company he worked for and that he first heard the name Dimensionall Logistics around the time of his termination. Doc. 23 at 108, 117. His response to Logistics's motion asserts that he "received multiple paychecks with rotating names – including Logistics," Doc. 27 at 2, but the testimony it cites names no entity at all, Doc. 23 at 102, and the names Stump identified elsewhere were "Dimensionall LLC," "Trans," and "Transportation," *id.* at 105, 107, 111. Stump's case against Logistics therefore relies entirely on successor liability.

While the Eleventh Circuit has held that an employee may hold a successor corporation liable for Title VII violations, *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983), it has not expressly extended successor liability principles to ADA claims, *see EEOC v. Lab. Sols. of AL LLC*, 242 F. Supp. 3d 1267, 1273 (N.D. Ala. 2017). The ADA nevertheless "invokes Title VII's powers, remedies, and procedure," which includes successor liability. *Lab. Sols. of AL LLC*, 242 F. Supp. 3d at 1273-74 (citing 42 U.S.C. § 12117(a) and collecting cases); *see also* Doc. 25 at 13 (conceding successor liability applicability to ADA cases).

"[T]he test for successor liability is fact specific and must be conducted in light of the facts of each case and the particular legal obligation which is at issue." *Nat'l Airlines, Inc.*, 700 F.2d at 698 (quoting *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union*, *AFL-CIO*, 417 U.S. 249, 262 n.9 (1974)). "There is, and can be, no single definition of 'successor' which is applicable in every legal context." *Id.* The Eleventh Circuit has applied the factors set out in *Teed v. Thomas & Betts Power Sols., LLC*, 711 F.3d 763, 765-66 (7th Cir. 2013), which include notice of the pending claim, the predecessor's ability to provide relief before and after the transfer, the successor's ability to provide relief, and continuity of operations and workforce, *see Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 907 (11th Cir. 2016); *see also Lab. Sols. of AL LLC*, 242 F. Supp 3d at 1278.

***First*,** notice. Logistics relies on Steig's testimony that Lance Perkins mentioned an "EOC claim," that he did not know what it concerned, and that he cannot recall when the conversation happened. Doc. 29 at ¶21; Doc. 23 at 28, 32. The evidence viewed in the light most favorable to Stump, however, suggests notice. Stump filed his charge on or about June 3, 2024. Doc. 6 at ¶9; Doc. 23 at 134. Logistics bought the predecessor's trucks two days earlier, hired Perkins that month, and began operating on August 1. Doc. 23 at 14, 16-17. Perkins had fielded Stump's complaints about Steig, *id.* at 115, and Stump testified that the responses he saw to

his charge came from Perkins, *id.* at 111. The response itself, on "dimensionall" letterhead, recites Stump's employment dates and describes him as having worked "for dimensionall transportation." *Id.* at 68. Steig confirmed that "whatever was going back and forth with EOC, that was Lance." *Id.* at 28. As the only human resources employee for Logistics, Doc. 23 at 14, Perkins's knowledge is attributable to Logistics. *Cf. Webb v. City of Venice*, No. 8:19-cv-3045, 2022 WL 2967291, at *6 (M.D. Fla. July 27, 2022) ("[W]here an employer designates particular employees as authorized or required to address or report harassment, their knowledge is also imputed to the employer regardless of their position in the corporate hierarchy.") (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889-90 (11th Cir. 2000)). A jury thus could find that Logistics knew of the charge while it was still coming together and before it officially began operations.

***Second***, the predecessors' ability to provide relief. Logistics asserts, without citation, that "Dimensionall, Inc. and Dimensionall Transportation would have been able to provide relief to Stump." Doc. 25 at 14. Steig's testimony contradicts this. Dimensionall, Inc. ceased operations on May 31, 2024, when its insurance lapsed. *See* Doc. 23 at 26. Dimensionall Transportation, by Steig's account, "never had an employee" and "never filed one tax return. Never received a check. Never wrote a check," *id.* at 17, 24, and Steig dissolved it on May 21, 2025, thirteen days after the EEOC issued Stump's right-to-sue notice, *id.* at 77; Doc. 6-1 at 1. Neither entity has

appeared in this action. What the record does say about Transportation's assets suggests its inability: Steig described Transportation as having "nothing anyway" and as "a completely nothing company." *Id.* at 18, 24. On this record, this factor weighs toward successor liability. *See Teed*, 711 F.3d at 766 (a predecessor's "inability to provide relief favors successor liability"). Logistics' own ability to satisfy a judgment is not disputed.

***Third***, continuity. Logistics's Statement of Undisputed Facts asserts that "[t]here is only one worker (a driver) employed by Dimensionall Logistics that was also employed by Dimensionall, Inc., Phillip Ingle." Doc. 25 at ¶23; *see also id.* at 15 ("Only one worker, out of the fifteen employed by Dimensionall Logistics, also shared employment under Dimensionall Inc. That worker is a driver and not a manager or owner."). Its reply contradicts this: "In addition to Steig, Phillip[] Ingle, and Steig's wife, Lance Perkins is the only other personnel that worked for Bob Perkins under Dimensionall, Inc." Doc. 29 at ¶23. Four people moved over when Logistics began, which is admittedly a small share of its workforce, but half of them are central to Stump's claims. The operations manager alleged to have harassed Stump, Ryan Steig, is Logistics's majority member, and the human resources manager alleged to have brushed off his complaints, Lance Perkins, became "[t]he only guy" in its human resources department. Doc. 23 at 12, 14.

The operational evidence also cuts against Logistics. Logistics hauls much of the same freight in the same market as Dimensionall, Inc. Doc. 23 at 17, 31. Logistics began operating out of its predecessor's address, though under a new lease. *Id.* at 16. It acquired four of the predecessor's trucks the day after the predecessor closed, trucks that appear to have ran under Transportation's authority and bore its name on the doors while in Inc's service. *Id.* at 16, 25, 112. Although there was a two-month gap between the operations, it was caused by delays in obtaining insurance. *See id.* at 17. Steig testified that Logistics did not serve the predecessor's customers "on a consistent basis," *id.*, which, at the very least, implies that it serves some of them. Against all of this, Logistics points only to the fact that it had a new lease, its own customer base, and no shared equipment, signage, telephone number, website, or email domain, together with its not having assumed its predecessor's debts, leases, or contracts. Doc. 25 at ¶¶9-19; *see also* Doc. 23 at 17 (separate bank accounts).

One further conflict bears directly on why successor liability is more properly suited for resolution by a jury. Logistics describes the June 2024 purchase of Dimensionall Transportation as abandoned. Doc. 25 at 14; *see also id.* at ¶22. Steig testified that he and Bob Perkins "signed all of the paperwork," agreed to "a thousand dollars a month for 24 months," and that he thinks he "made two payments" before learning that the Michigan entity could not be moved to Alabama. Doc. 23 at 14, 27. He also testified that he had never been a member of Dimensionall Transportation.

*Id.* at 14. Nearly a year later he signed its Certificate of Dissolution as "Member," attributing it to a "unanimous vote." *Id.* at 77. Whether the transaction was abandoned or completed in substance, and what Steig's signature on that certificate signifies, are questions the Court cannot resolve at this point.

The broader sequence of events provides some additional context and suggests continuity. Steig formed the entity now called Logistics on April 18, 2024, while still the predecessor's operations manager and while knowing the predecessor would close, and he listed the Hamilton hub from which the predecessor operated on the formation filing. Doc. 23 at 12-13, 15-16, 26, 70. He named it Dimensionall Trans, then renamed it Dimensionall Logistics on May 7, one week before Stump's termination. *Id.* at 70; Doc. 6 at ¶19. He bought Dimensionall, Inc.'s trucks and contracted to buy Dimensionall Transportation, the authority Inc.'s trucks ran under, for its older USDOT number on June 1. *Id.* at 14, 16, 21, 24, 27. He moved Logistics's registered agent off the predecessor's address on May 8, 2025, the day the EEOC issued Stump's notice of rights, and dissolved Dimensionall Transportation thirteen days later. *Id.* at 70, 77; Doc. 6-1 at 1. Logistics offers an explanation for each step: the hub address was a placeholder until he could obtain a new office, he disliked the first name, the purchase failed because of Michigan law, and insurance dictated the timing of operations. Doc. 23 at 12, 14-17, 21; Doc. 29 at

¶¶6, 9. A jury may credit each of these explanations, but Rule 56 does not permit the Court to credit them on its behalf.

On this evidence, a reasonable jury could find that Dimensionall Logistics is the successor to Dimensionall, Inc. for purposes of Stump's ADA claims. That finding would defeat the only ground on which Logistics moved, so the Court does not reach Stump's alter ego theory.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Dimensionall Logistics, LLC's Motion for Summary Judgment (Doc. 24).

**DONE** and **ORDERED** this 11th day of September, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE